UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA CIVIL LIBERTIES UNION | ) | |
| FOUNDATION, INC., and the INDIANA | ) | |
| CIVIL LIBERTIES UNION, INC., d/b/a | ) | |
| the American Civil Liberties Union of | ) | |
| Indiana; | ) | |
| JANE HENEGAR, KATHRYN BLAIR, | ) | |
| NEIL HUDELSON, on their own | ) | |
| behalf and on behalf of a class | ) | |
| and subclass of those similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-1094 |
| | ) | |
| SUPERINTENDENT, INDIANA STATE | ) | |
| POLICE, in his official capacity; | ) | |
| MAYOR OF INDIANAPOLIS, in his | ) | |
| official capacity; MARION COUNTY | ) | |
| PROSECUTOR, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief / Challenge to
Constitutionality of State Statute**

## I.    Introduction

1.     House Enrolled Act No. 1022, effective July 1, 2020, expands upon an existing

statutory prohibition criminalizing "panhandling" and targets particular First

Amendment expression in a flagrantly broad, vague, and unconstitutional manner and

has the effect of prohibiting most forms of financial solicitation by individuals and groups

on the sidewalks in the downtown areas of Indiana's cities. Three of these persons, the Executive Director, Director of Advocacy and Public Policy, and Director of Philanthropy of the American Civil Liberties Union of Indiana will now, ironically, be banned from soliciting contributions and organization memberships from persons during the celebration of Constitution Day.  The statutory prohibition, both currently and effective July 1, 2020, violates the First Amendment.  It is also unconstitutionally vague in violation of due process.  The constitutional rights of the organization, its three employees, and a class and subclass of those similarly situated are being violated. Appropriate injunctive and declaratory relief must issue.

**Jurisdiction, venue, and cause of action**

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1291.

4.      Declaratory relief is authorized pursuant 28 U.S.C.  §§ 2201, 2202 and Federal Rule of Civil Procedure 57.

5.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.      The Indiana Civil Liberties Union Foundation, Inc. and Indiana Civil Liberties Union, Inc., are two Indiana nonprofit corporations, housed in Indianapolis, that are together popularly known as the American Civil Liberties Union of Indiana or the ACLU

of Indiana.

7.      Jane Henegar is an adult resident of the State of Indiana.

8.      Kathryn Blair is an adult resident of the State of Indiana.

9.      Neil Hudelson is an adult resident of the State of Indiana.

10.     The Superintendent of the Indiana State Police is the duly appointed head of the law enforcement body that, among other things, polices property owned and controlled by the State of Indiana and has law enforcement and arrest authority on all properties in Indiana. He is sued in his official capacity.

11.     The Mayor of Indianapolis is the duly elected head of Indiana's largest city and controls the  Indianapolis Police Department, the law enforcement body that polices the City of Indianapolis, including its downtown area. He is sued in his official capacity.

12.     The Marion County Prosecutor is the duly elected prosecutor for Marion County, Indiana, the Indiana county within which Indianapolis is located. He is sued in his official capacity.

**Class action allegations**

13.     The individual plaintiffs bring this action on their own behalf and on behalf of both a class and subclass of those similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

*The class*

14.     The proposed class is defined as all persons who engage in panhandling, as

defined by Indiana Code § 35-45-17-1, in the State of Indiana. This class brings its claims

against the Superintendent of the Indiana State Police.

15.    As defined, the class meets all the requirements of Federal Rule of Civil Procedure

23(a). Specifically:

a.    The class is so numerous that joinder of all members is impracticable. A March 2018 report by Indiana University's Public Policy Institute, based on surveys in 2017, surveyed panhandlers in downtown Indianapolis and noted that there were 73 panhandlers approached by the surveyors. INDIANA UNIVERSITY PUBLIC POLICY INSTITUTE, *State of Panhandling in Downtown    Indianapolis – 2017 Report*, March 2018, at 5, https://static1.squarespace.com/static/5ad505796d455fa 43a30309/t/5b22c686758d4667b8262808/1530647824087/State+of+Panhandling+Re port (last visited Apr. 4, 2020). There are panhandlers in other cities in Indiana. *See, e.g.*, WSBT-22, *UPDATE: South Bend City Council unanimously supports proposal to reduce panhandling*, June 12, 2017, https://wsbt.com/news/local/south-bend-city-council-to-discuss-panhandling-proposal (last visited Apr. 4, 2020); John Martin, COURIER & PRESS, *Homelessness count flat in Evansville and Vanderburgh; advocates say don't give to panhandlers*, June 22, 2018, https://www.courierpress.com/story/news/ 2018/06/22/homeless-advocates-dont-give-panhandlers/726788002/ (last visited Apr. 4, 2020); Laura Lane, HERALD-TIMES ONLINE, *Some of the homeless and panhandlers in downtown Bloomington share their stories*, June 4, 2017, https://www. hoosiertimes.com/herald_times_online/news/local/some-of-the-homeless-and-panhandlers-in-downtown-bloomington-share/article_067b656b-9f71-58f5-9ffb-ae2fbe9ee490.html (last visited Apr. 4, 2020).

b.    There are questions of law or fact common to the class: whether Indiana Code § 35-45-17-2 (amended eff. July 1, 2020) is unconstitutional.

c.    The claims of the representative parties are typical of those of the class.

d.    The representative parties will fairly and adequately protect the interests of the class.

16.    The further requirements of Rule 23(b)(2) are met in this cause as at all times

defendant Superintendent will act, or refuse to act, on grounds generally applicable to

the class.

17.     Undersigned counsel are appropriate persons to be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed.

   *The subclass*

18.     The proposed subclass is defined as all persons who engage in panhandling, as defined by Indiana Code § 35-45-17-1, in the City of Indianapolis. In addition to being brought against the Superintendent of the Indiana State Police, the subclass brings its claims against the Mayor of Indianapolis and the Marion County Prosecutor.

19.     As defined, the subclass meets all the requirements of Federal Rule of Civil Procedure 23(a). Specifically:

   a.     The class is so numerous that joinder of all members is impracticable. As noted above, one study found more than 70 panhandlers in downtown Indianapolis. *State of Panhandling in Downtown Indianapolis* at 5, *supra.*

   b.     There are questions or law or fact common to the class: whether Indiana Code § 35-45-17-2 (amended eff. July 1, 2020) is unconstitutional.

   c.     The claims of the representative parties are typical of those of the class.

   d.     The representative parties will fairly and adequately protect the interests of the class.

20.     The further requirements of Rule 23(b)(2) are met in this cause as at all times defendants will act, or refuse to act, on grounds generally applicable to the class.

**Legal background**

21.     Indiana law, Indiana Code § 35-45-17-1, currently defines panhandling as follows:

[5]

(a)     As used in this chapter, "panhandling" means to solicit an individual:
(1) on a street or in another public place; and
(2) by requesting an immediate donation of money or something else of value.

(b) The term includes soliciting an individual:
(1) by making an oral request;
(2) in exchange for:
(A) performing music;
(B) singing; or
(C) engaging in another type of performance; or
(3) by offering the individual an item of little or no monetary value in exchange for money or another gratuity under circumstances that would cause a reasonable individual to understand that the transaction is only a donation.

(c) The term does not include an act of passively standing, sitting, performing music, singing, or engaging in another type of performance:
(1) while displaying a sign or other indication that a donation is being s ought; and
(2) without making an oral request other than in response to an inquiry by another person.

22.     At the current time, Indiana's law criminalizing certain types of panhandling,

Indiana Code § 35-45-17-2 (amended eff. July 1, 2020), provides that:

A person who knowingly or intentionally does any of the following commits panhandling, a Class C misdemeanor:
(1) Panhandling after sunset and before sunrise.
(2) Panhandling when the individual being solicited is:
(A) at a bus stop;
(B) in a:
(i) vehicle; or
(ii) facility;
used for public transportation;
(C) in a motor vehicle that is parked or stopped on a public street or alley, unless the person soliciting the individual has the approval to do so by a unit of local government that has jurisdiction over the public street or alley;

(D) in the sidewalk dining area of a restaurant; or

(E) within twenty (20) feet of:

    (i) an automated teller machine; or

    (ii) the entrance to a bank.

(3) Panhandling while touching the individual being solicited without the solicited individual's consent.

(4) Panhandling while the individual being solicited is standing in line and waiting to be admitted to a commercial establishment.

(5) Panhandling while blocking:

(A) the path of the individual being solicited; or

(B) the entrance to a building or motor vehicle.

(6) Panhandling while using profane or abusive language:

(A) during a solicitation; or

(B) after the individual being solicited has declined to donate money or something else of value.

(7) Panhandling while making a statement, a gesture, or another communication to the individual being solicited that would cause a reasonable individual to:

(A) fear for the individual's safety; or

(B) feel compelled to donate.

(8) Panhandling with at least one (1) other individual.

(9) Panhandling and then following or accompanying the solicited individual without the solicited individual's consent after the solicited individual has declined to donate money or something else of value.

23.    House Enrolled Act 1022, entitled "AN ACT to amend the Indiana Code concerning criminal law and procedure" creates a number of new statutory sections concerning "panhandling."

24.    Section 1 of the Enrolled Act creates Indiana Code § 35-31.5-2-132.7 (eff. July 1, 2020), which defines the term "financial transaction" in the Enrolled Act as having "the meaning set forth in Indiana Code 35-45-27-0.5," a new statutory section created by Section 3 of the Act, also effective July 1, 2020, which states:

As used in this chapter, "financial transaction" means any exchange of currency

[7]

by cash, note, or credit card or through a wireless portal that is received by:

>  (1) a business;
>  (2) a parking meter or parking pay station on a street or another public place;
>  (3) a public parking garage or parking lot pay station;
>  (4) a facility or pay station operated by a public transportation authority; or
>  (5) a restaurant or the service area of an outdoor seating establishment.

25.    Section 2 of the Enrolled Act creates Indiana Code § 35-31.4-2-257.5, which states that the term "public monument," as used in the Enrolled Act, "has the meaning set forth in IC 35-45-17-1.5." This latter statute, created by Section 4 of the Enrolled Act, provides that "'public monument' means a building, structure, or site that is of historical importance or interest that is preserved as public property." Ind. Code § 35-45-17-1.5 (eff. July 1, 2020).

26.     Section 5 of the Enrolled Act amends prior Indiana law so that it will, effective July 1, 2020, provide as follows (new substantive provisions of the statute, as amended by the Enrolled Act, are in italics):

>  A person who knowingly or intentionally does any of the following commits panhandling, a Class C misdemeanor:
>  (1) Panhandling when the individual being solicited is:
>       (A) at a bus stop;
>       (B) in a:
>               (i) vehicle; or
>               (ii) facility;
>       used for public transportation;
>       (C) in a motor vehicle that is parked or stopped on a public street or alley, unless the person soliciting the individual has the approval to do so by a unit of local government that has jurisdiction over the public street or alley;

(D) in the sidewalk dining area of a restaurant; or

(E) within *fifty (50)* feet of:

(i) an automated teller machine; or

(ii) the entrance *or exit* to a bank, *business, or restaurant*; *or*

(iii) *the location where a financial transaction occurs; or*

(F) *within fifty (50) feet of a public monument.*

(2) Panhandling while touching the individual being solicited without the solicited individual's consent.

(3) Panhandling while the individual being solicited is standing in line and waiting to be admitted to a commercial establishment.

(4) Panhandling while blocking:

(A) the path of the individual being solicited; or

(B) the entrance to a building or motor vehicle.

(5) Panhandling while using profane or abusive language:

(A) during a solicitation; or

(B) after the individual being solicited has declined to donate money or something else of value.

(6) Panhandling while making a statement, a gesture, or another communication to the individual being solicited that would cause a reasonable individual to:

(A) fear for the individual's safety; or

(B) feel compelled to donate.

(7) Panhandling with at least one (1) other individual.

(8) Panhandling and then following or accompanying the solicited individual without the solicited individual's consent after the solicited individual has declined to donate money or something else of value.

Ind. Code § 35-45-17-2 (amended portions effective July 1, 2020).

27.     A Class C misdemeanor is punishable by imprisonment for up to 60 days and a fine of up to $500. Ind. Code § 35-50-3-4.

28.     Officers of the Indiana State Police have "in any part of Indiana, the same powers concerning criminal matters and the enforcement of related laws as sheriffs, constable, and police officers have in their respective jurisdiction." Ind. Code § 10-11-2-21(c)(1). They therefore have the ability "to arrest, without warrant, a person who is committing

or attempting to commit in their presence or view a violation of the laws of the state."

Ind. Code § 10-11-2-21(f).

**Factual allegations**

29.     The ACLU of Indiana is the popular name of two Indianapolis-based non-profit corporations: the Indiana Civil Liberties Union Foundation, Inc. and the Indiana Civil Liberties Union, Inc.

30.     The ACLU of Indiana is the Indiana affiliate of the national civil rights organization, the American Civil Liberties Union, and it is one of the preeminent civil rights organization in the State of Indiana.

31.     The ACLU of Indiana and its more than 14,000 members are dedicated to advocating for the constitutional rights of Hoosiers and to advance that goal the ACLU of Indiana and its employees engage in, among other things, community education, legislative and administrative advocacy, and litigation.

32.     Jane Henegar is the Executive Director the ACLU of Indiana and has been since 2012. She leads and directs the efforts of the organization.

33.     Kathryn Blair is the Director of Advocacy and Public Policy of the ACLU. She leads the organization's coalition and legislative work.

34.     Neil Hudelson is the ACLU's Director of Philanthropy. He leads the organization's fundraising efforts.

35.     For at least the last nine years, employees of the ACLU, including the plaintiffs,

have participated in the celebration of Constitution Day, on September 17 (or the nearest weekday to that date), which is the day that the delegates to the original Constitutional Convention signed the document in 1787.

36.     The holiday was formally recognized by Congress in 2004, which requires that all publicly funded educational institutions and federal agencies provide programming concerning the Constitution on Constitution Day. LIBRARY OF CONGRESS, *Constitution Day and Citizenship Day*, https://www.loc.gov/law/help/commemorativeobservations/constitution-day.php (last visited Apr. 2, 2020).

37.     The ACLU of Indiana observes Constitution Day in various ways. Beginning in 2016 and continuing every year since then, part of the observance includes having staff and volunteers go to Monument Circle in Indianapolis and, among other things, hand out pocket copies of the Constitution. This occurs from late morning until early afternoon.

38.     Although the plaintiffs believe that the Constitution itself is priceless, the small pocket copies that they distribute on Constitution Day have little or no monetary value.

39.     While handing out the copies, the staff and volunteers have in the past solicited donations to the ACLU of Indiana,  as well as asked persons if they would like to join the organization, for which there is a membership fee.

40.     The staff and volunteers have therefore engaged in behavior that Indiana law defines as "panhandling" as they  have requested an immediate donation of money or something of value, membership in the ACLU of Indiana, through oral requests.

41.     Plaintiffs Henegar, Blair, and Hudelson have engaged in these activities in the past and intend to engage in this behavior at the next Constitution Day celebration, September 17, 2020 and at Constitution Day celebrations in future years on Monument Circle in downtown Indianapolis.

42.     The plaintiffs also plan, at the next and future Constitution Day celebrations, to instruct persons on the significance of the Constitution and the importance of constitutional rights while soliciting donations and membership in the ACLU of Indiana. However, they are unclear as to whether that could be deemed to be soliciting  persons in a manner that would cause a reasonable person to feel compelled to donate, in violation of the current panhandling statute and the statute that will be effective on July 1, 2020.

43.     Plaintiffs are aware that during past Constitution Day observances at Monument Circle two or more persons from the ACLU of Indiana have stood together while one  of them spoke to a member of the public while soliciting donations or membership from the person. Plaintiffs would like the ability to do this in the future. But these joint conversations appear to be prohibited by the proscription against "panhandling with at least one other individual" contained in the current panhandling statute and the statute that will be effective on July 1, 2020.

44.     Monument Circle is the location of the Soldiers and Sailors Monument that is situated inside a traffic circle formed by the intersection of Market and Meridian Streets

in  downtown Indianapolis.

45.     Monument Circle is the center of downtown Indianapolis and during the late morning to early afternoon hours on weekdays has a great deal of pedestrian traffic.

46.     The Monument  is a large structure that was completed in 1901 and was erected to honor Indiana residents who fought in the American Revolution, the War of 1812, the Mexican-American War, the Civil War, and the Spanish-American War.

47.     Two sides of the Monument have a series of more than 300 steps leading to the almost 300-foot monument.

48.     The grounds of the Monument, specifically its steps and the areas immediately in front of the steps, are frequently the site of rallies, protests, and group activities.

49.     The Monument and the area inside of the traffic circle is owned by the State of Indiana as are the areas north of the Circle that include the Indiana War Memorial, Veteran's Memorial Plaza, American Legion Mall, and University Park.

50.     The law enforcement agency primarily responsible for enforcing Indiana law in these Indiana-owned areas is the Indiana State Capitol Police, a branch of the Indiana State Police.

51.     The area on the outside of the traffic circle, which features a broad sidewalk, is owned by the City of Indianapolis.

52.     As noted above, the Indiana State Police have authority to enforce Indiana's laws in all areas of Indianapolis. The City of Indianapolis, through the Indianapolis Police

Department, also has authority to enforce all laws in the City of Indianapolis.

53.     When plaintiffs have solicited contributions and ACLU of Indiana memberships in the past during Constitution Day observances, they have done so both inside Monument Circle and on the sidewalk outside of Monument Circle. That is, they have engaged in this behavior both on City property and State property.

54.     They wish to engage in the identical behavior in the identical locations during the next Constitution Day, September 17, 2020, and on Constitution Days in future years.

55.     Although the definition is not clear, the plaintiffs assume that the Soldiers and Sailors Monument could be deemed to be a "public monument" as defined by the Enrolled Act.

56.     When they have engaged in their actions during past Constitution Day observances the plaintiffs have always been within fifty feet of the Soldiers and Sailors Monument property or on the property itself.

57.     Moreover, they have always been within 50 feet of places that engage in "financial transactions" as that term is defined by the Enrolled Act as the sidewalk on the outside of the Circle is bounded by banks, businesses, and restaurants.

58.     The Enrolled Act therefore absolutely prohibits plaintiffs from engaging in solicitation of donations and membership during Constitution Day in the locations that they have done so in the past and wish to continue to do so in the future.

59.     Because of the breadth of the definition in the Enrolled Act of "financial

transaction," the expansion of the places near where panhandling is prohibited, and the increase of the distance restriction in the Act to 50 feet, there are no or virtually no sidewalks in downtown Indianapolis where plaintiffs can engage in their expressive activities to commemorate Constitution Day.

60.     As noted, the State of Indiana also controls American Legion Mall and University Park, which are separate parks north of Monument Circle.

61.     University Park is one square city block and the American Legion Mall is at least two square city blocks.

62.     There are perhaps areas within those two urban parks that are more than 50 feet from an automated teller machine, the entrance or exit to a bank, business or restaurant, or the location where a financial transaction occurs, as that term is defined by the Enrolled Act.

63.     However, plaintiffs are uncertain if law enforcement would consider those areas as a "site that is of historical importance or interest that is preserved as public property," *i.e.*, a "public monument" as defined by the Enrolled Act, as the term "site that is of historical importance or interest" is not defined and its meaning is not readily ascertainable.

64.     Plaintiffs do not want to conduct their expressive activities in these parks as there are many more persons in and around Monument Circle during weekday daytime hours and they wish to celebrate the Constitution and Constitution Day where there are the

most people to talk to and solicit.

65.    The Enrolled Act effectively bans panhandling in downtown Indianapolis and it has been reported as doing precisely this. Jill Sheridan, WFYI, *Bill Further Restricts Panhandling*, March 11, 2020, https://www.wfyi.org/news/articles/bill-further-restricts-panhandling (last visited Apr. 3, 2020); Indiana Lawyer, *Bill to effectively ban panhandling in Indianapolis passes both chambers*, March 11, 2020, https://www.theindianalawyer.com/articles/bill-to-effectively-ban-panhandling-in-indianapolis-passes-both-chambers   (last visited Apr. 3, 2020).

66.    Indianapolis is not the only city in Indiana where persons on the city's sidewalks seek contributions from other persons.

67.    The Enrolled Act will effectively ban panhandling not just throughout downtown Indianapolis, but in the downtown areas of all Indiana's cities as the Enrolled Act will prohibit panhandling within 50 feet of such common urban features as parking meters, restaurants, businesses or banks. *See, e.g.* Niki Kelly, THE JOURNAL GAZETTE (Fort Wayne), *Panhandling bill passes Indiana House, heads back to Senate*, Mar. 3, 2020, https://www.journalgazette.net/news/local/20200303/panhandling-bill-passes-indiana-house-heads-back-to-senate (last visited Apr. 4, 2020) (noting that the Enrolled Act represented "[a] move to expand the state's panhandling law – virtually covering all downtown urban areas"); Allyson McBride, INDIANA DAILY STUDENT, *OPINION: Indiana legislators want to criminalize panhandling. They shouldn't.*, March 2, 2020,https://www.idsnews.com/article/

2020/03/opinion-indiana-legislators-want-to-criminalize-panhandling-they-shouldn't

(last visited Apr. 3, 2020) ("Think of how many parking meters are around Bloomington. Panhandlers would be completely pushed out of highly trafficked areas such as Kirkwood.").

68.    The Enrolled Act is causing plaintiffs and the members of the putative class and subclass irreparable harm for which there is no adequate remedy at law.

69.    At all times the defendants have acted and have refused to act under color of state law.

**Claims for Relief**

70.    Indiana Code § 35-45-17-2, both currently and as amended by the Enrolled Act, violates the First Amendment to the United States Constitution by unconstitutionally criminalizing expressive speech and conduct.

71.    Indiana Code § 35-45-17-2, both currently and as amended by the Enrolled Act, contains overbroad and vague terms in violation of both due process and the First Amendment and is unconstitutional.

**Request for relief**

WHEREFORE, plaintiffs request that this Court:

1.    Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.    Certify this case as a class action, with the individual plaintiffs as class representatives, and undersigned counsel as class counsel, with the class and subclass as defined above.

3.      Declare that Indiana Code § 35-45-17-2 (amended July 1, 2020) is unconstitutional for the reasons noted above.

4.      Enter a preliminary injunction, later to be made permanent, enjoining Indiana Code § 35-45-17-2 (amended July 1, 2020) in its entirety.

5.      Award plaintiffs their costs and reasonable attorneys' fees.

6.      Award all other proper relief.

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Attorneys for the Plaintiffs and the Putative Class