UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA CIVIL LIBERTIES UNION FOUNDATION, INC., INDIANA CIVIL LIBERTIES UNION, INC., and JANE HENEGAR, KATHRYN BLAIR, and NEIL HUDELSON, *on their own behalf and on behalf of a class and subclass of those similarly situated*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SUPERINTENDENT, INDIANA STATE POLICE, MAYOR OF INDIANAPOLIS, and MARION COUNTY PROSECUTOR, *in their official capacities*, <br><br> *Defendants*. | No. 1:20-cv-01094-JMS-TAB |

**ORDER**

Plaintiffs the Indiana Civil Liberties Union Foundation, Inc. and the Indiana Civil Liberties Union, Inc. (collectively, the "ACLU of Indiana"), and three of their employees initiated this action against Defendants the Superintendent of the Indiana State Police (the "Superintendent"), the Mayor of Indianapolis (the "Mayor"), and the Marion County Prosecutor (the "Prosecutor") to enjoin enforcement of the pre-amendment and amended versions of Indiana Code § 35-45-17-2, a statute that prohibits certain panhandling activities. Plaintiffs allege that the statute is a content-based prohibition on free speech that violates the First Amendment. They have filed a Motion for Class Certification, in which the individual Plaintiffs seek to represent a class and subclass of similarly situated individuals. [Filing No. 16.] That motion is now ripe for the Court's decision.

1

# I.
## BACKGROUND

Indiana Code § 35-45-17-1 defines "panhandling" as follows:

(a) As used in this chapter, "panhandling" means to solicit an individual:
   (1) on a street or in another public place; and
   (2) by requesting an immediate donation of money or something else of value.
(b) The term includes soliciting an individual:
   (1) by making an oral request;
   (2) in exchange for:
     (A) performing music;
     (B) singing; or
     (C) engaging in another type of performance; or
   (3) by offering the individual an item of little or no monetary value in exchange for money or another gratuity under circumstances that would cause a reasonable individual to understand that the transaction is only a donation.
(c) The term does not include an act of passively standing, sitting, performing music, singing, or engaging in another type of performance:
   (1) while displaying a sign or other indication that a donation is being sought; and
   (2) without making an oral request other than in response to an inquiry by another person.

Ind. Code § 35-45-17-1. The statute at issue in this case, Indiana Code § 35-45-17-2, criminalizes certain panhandling as a Class C misdemeanor. With amendments set to take effect on July 1, 2020, and based on their belief that certain activities in which they plan to engage on Constitution Day[1] violate both the pre-amendment and amended versions of the statute, Plaintiffs seek to enjoin enforcement of both versions of the statute. [Filing No. 10.] Plaintiffs highlight both the pre-amendment and amended versions' prohibition on panhandling with at least one other individual, Ind. Code § 35-45-17-2(8) and Ind. Code § 35-45-17-2(7) (amended eff. July 1, 2020), and the amended version's prohibition on panhandling within 50 feet of an automated teller machine, the entrance or exit to a bank, business, or restaurant, or the location where a financial transaction

---

[1] Constitution Day is a holiday that was recognized by Congress in 2004 to celebrate and commemorate the signing of the final draft of the United States Constitution at the Constitutional Convention on September 17, 1787.

occurs, or within 50 feet of a public monument, Ind. Code § 35-45-17-2(1)(E), (F) (amended eff. July 1, 2020).

In their Motion for Class Certification, Plaintiffs Jane Henegar, the Executive Director of the ACLU of Indiana, Kathryn Blair, the Director of Advocacy and Public Policy for the ACLU of Indiana, and Neil Hudelson, the Director of Philanthropy for the ACLU of Indiana, seek to represent a class and subclass of those similarly situated. [Filing No. 17 at 1-2.] Plaintiffs define their proposed class as:

> [A]ll persons in the State of Indiana who engage, or will engage, in panhandling, as defined by Indiana Code § 35-45-17-1.

[Filing No. 17 at 2.]  They defined their proposed subclass as:

> [A]ll persons in the City of Indianapolis who engage, or will engage, in panhandling, as defined by Indiana Code § 35-45-17-1.

[Filing No. 17 at 2.]

## II.
### STANDARD OF REVIEW

In deciding whether to certify a class, the Court may not blithely accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under [Federal Rule of Civil Procedure] 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).  The Court must first find that the putative class is identifiable. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Then, the Court must find that the class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a), which are that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

23(a). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 US. 147, 156 (1982).

If the putative class satisfies the prerequisites of Rule 23(a), the Court must additionally find that it satisfies the requirements set forth in Rule 23(b), which vary depending upon which of three different types of classes is proposed. *Oshana*, 472 F.3d at 513; *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000). Here, Plaintiffs proceed under Rule 23(b)(2), which requires them to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### III.
### DISCUSSION

#### A. Whether an Identifiable Class Exists

In addition to the class certification prerequisites specifically enumerated in Rule 23, it is Plaintiffs' burden to prove "that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. Plaintiffs' proposed class and subclass definitions include individuals "who engage, or will engage, in panhandling, as defined by Indiana Code § 35-45-17-1." [Filing No. 17 at 2.] Plaintiffs argue that "[t]here is no need to linger over [Rule 23's implicit requirement that the class be identifiable] as the definition here is clear and membership is defined by the criteria established by Indiana Code § 35-45-17-1." [Filing No. 17 at 6-7.] Defendants[2] do not address the identifiable class requirement in their response brief. [*See* Filing No. 29.]

---

[2] Plaintiffs and the Mayor filed a Joint Motion requesting that the Court approve their agreement that the Mayor be relieved of any obligation to participate in the briefing of motions "or otherwise take any further role or part in this litigation," but that he will be bound by the Court's rulings in this case. [Filing No. 25.] The Court approved the agreement entered into between Plaintiffs and the Mayor. [Filing No. 27.] Defendants' response brief was filed by counsel for the Superintendent and the Prosecutor but, for simplicity, the Court refers to "Defendants" in this Order.

Plaintiffs' class and subclass definitions make membership dependent on whether individuals engage in panhandling as defined in § 35-45-17-1. The Court finds that these definitions are sufficient to establish an identifiable class and subclass.

**B. Rule 23(a) Requirements**

Plaintiffs argue that they meet all four prerequisites of Rule 23(a), and Defendants argue that Plaintiffs meet none. [Filing No. 17 at 6-21; Filing No. 29 at 5-19.] The Court addresses each prerequisite in turn.

*1. Numerosity*

As to numerosity, Plaintiffs argue that studies regarding panhandling in Indianapolis demonstrate the proposed class meets the numerosity requirement. [Filing No. 17 at 8-14.] They point to a study that examined inmate booking records for persons cited for unlawful panhandling in Marion County between January 1, 2015 and December 1, 2018 (the "Marion County Study"), and which found that there were 146 citations and arrests for unlawful panhandling, involving 121 individuals. [Filing No. 17 at 8.] Plaintiffs assert that the study also found that "[a]t least 85% of the citations or arrests for which police reports were obtained occurred within the Mile Square portion of Indianapolis," which "averages out to slightly more than 25 persons a year…being cited or arrested for engaging in unlawful panhandling." [Filing No. 17 at 8-9.] Plaintiffs note that the study did not include those who were panhandling, but were not cited or arrested. [Filing No. 17 at 9.] They also discuss a study undertaken by Indiana University (the "IU Study"), which surveyed panhandlers in downtown Indianapolis on three separate days in 2017 and identified 73 individuals who were panhandling on those days. [Filing No. 17 at 9.] Plaintiffs point to two Declarations and various media reports in asserting that individuals panhandle in other cities in Indiana, including Fort Wayne, Bloomington, Evansville, Lafayette, Michigan City, and South

5

Bend. [Filing No. 17 at 9-11.] Plaintiffs argue that the Court should consider the fact that the class is geographically diverse and that individual class members are unlikely to file their own lawsuits, stating that "[t]his is of special consideration here where the class undoubtedly consists of many homeless and poor persons." [Filing No. 17 at 12.] They assert that the Court may also consider the fact that the class contains future class members, and that their joinder would be impracticable. [Filing No. 17 at 13.] Finally, Plaintiffs argue that the subclass meets the numerosity requirement, citing to the study identifying 73 individuals in downtown Indianapolis who were engaged in panhandling on the days surveyed. [Filing No. 17 at 14.] They acknowledge that the study included those who were engaging in passive behavior that does not fall within § 35-45-17-1's definition of panhandling, but argue that "25 persons are being cited or arrested each year for unlawful panhandling, which requires more than passive behavior," and that "this does not include persons like the individual plaintiffs in this case who engage in behavior that falls within the definition of 'panhandling,' but who do not necessarily fit the imagined profile of panhandlers." [Filing No. 17 at 14.]

Defendants argue in their response that Plaintiffs have not provided sufficient evidence to meet the numerosity requirement. [Filing No. 29 at 5-11.] They assert that "the studies and news articles that Plaintiffs rely upon focus only on persons who have engaged in panhandling in the past," and that "Plaintiffs are unable to identify any person, beyond themselves, who will be engaging in panhandling after July 1, 2020." [Filing No. 29 at 6.] Defendants contend that neither of the Declarations Plaintiffs submit in support of their Motion for Class Certification specify how many people were seen panhandling in the areas the declarants discussed, and that neither the Marion County Study nor the IU Study support Plaintiffs' numerosity arguments. [Filing No. 29 at 8-10.] Specifically, Defendants contend that the Marion County Study does not discuss the

circumstances of each arrest – for example, whether the arrest was related to panhandling at night, which would not violate the amended version of the statute. [Filing No. 29 at 9.] Defendants also argue that some of the 121 individuals could have been charged with "the prohibition on using abusive or profane language or following someone after a request for money is denied, neither of which the Plaintiffs challenge as unconstitutional." [Filing No. 29 at 9.] Defendants argue further that the Marion County Study "does not specify how many of [the] 121 individuals [identified in the study] violated the statute versus [a] city ordinance, which is not at issue here." [Filing No. 29 at 9.] Defendants assert that the IU Study does not distinguish whether the panhandlers were making verbal requests for money or simply holding a sign – which would not be considered panhandling under § 35-45-17-1. [Filing No. 29 at 8.] They contend that "Plaintiffs presume, without evidence, that a significant number of [the] 73 people [identified in the IU Study] would be in violation of the panhandling statute." [Filing No. 29 at 8.] Defendants contend further that neither the Marion County Study nor the IU Study show how many people will be panhandling in the future, or even the number who panhandled this year, and that Plaintiffs rely upon media reports to assume and infer that there are enough class members to meet the numerosity requirement. [Filing No. 29 at 10-11.]

In their reply, Plaintiffs argue that the Marion County Study and the IU Study provide sufficient evidence of numerosity, and that "[i]t would, of course, be nearly impossible to maintain a statewide count of the number of people engaged in panhandling at any given point in time." [Filing No. 31 at 2-3.] They assert that the Marion County Study is not overinclusive by potentially including individuals who violated a Marion County ordinance regulating panhandling, because the ordinance and the pre-amendment version of the statute "are coextensive" with each other. [Filing No. 31 at 3-4.] Plaintiffs note that the amended version of the statute "brings significantly

7

more conduct under its ambit than either the prior version of the statute or the Marion County ordinance, logically resulting in more individuals falling within the scope and within the proposed class definition." [Filing No. 31 at 4.] Plaintiffs acknowledge that neither the Marion County Study nor the IU Study "parse panhandling activities" based on whether the individual was engaging in passive panhandling or panhandling at night, but that the Court may make common sense assumptions including that "a person who engages in one form of panhandling activity is likely to also engage in others." [Filing No. 31 at 4-5.] Plaintiffs contend that they have shown that the subclass of Marion County panhandlers is sufficiently numerous, and need not show numerosity for every Indiana city. [Filing No. 31 at 5-6.] They assert that Defendants do not address the fact that the studies' counts may be underinclusive because "a tally of arrests and citations is likely to represent only a fraction of individuals actually engaging in the prohibited conduct." [Filing No. 31 at 6-7.] Finally, Plaintiffs argue that the studies provide a reasonable estimate of future panhandling activities, and that joinder of class members would be impracticable. [Filing No. 31 at 7-10.]

Rule 23(a)(1) requires that, in order for a class to be certified, it must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "[T]here is no magic number that applies to every case, [but] a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). While "mere speculation" and "conclusory allegations" regarding the class size will not support a conclusion that joinder of members would be impractical, *Arreola v. Godinez*,

546 F.3d 788, 797 (7th Cir. 2008), "[a] court must rely on simple common sense when determining whether a class size meets the numerosity requirement," *Hizer v. Pulaski Cnty., Ind.*, 2017 WL 3977004, at *4 (N.D. Ind. 2017). The Court "may examine statistical data and then draw inferences from the facts to determine whether the numerosity requirement has been met." *Id.* (quotation and citation omitted).

a. The Subclass

The Court acknowledges that Plaintiffs have not established the exact number of members in their proposed subclass of all persons in the City of Indianapolis who engage, or will engage, in panhandling as defined by § 35-45-17-1, but they need not do so. The Court may rely on the Marion County Study and the IU Study to determine whether it is reasonable to believe that the subclass is large enough to make joinder impracticable. *Hizer*, 2017 WL 3977004, at *4. The Marion County Study shows that in a four-year period beginning in 2015 and ending in 2018, there were 146 citations and arrests for unlawful panhandling in Marion County, involving 121 individuals. https://www.answerindiana.org/wp-content/uploads/2019/01/ Policing-Panhandling-Indy-2015-2018.pdf (last visited June 30, 2020). At least 85% of those citations and arrests took place within downtown Indianapolis. *Id.* Accordingly, at least 102 individuals were arrested or cited for panhandling in this four-year period, or an average of 25 individuals were arrested or cited per year. *Id.* It is true that the Marion County Study does not provide details regarding each arrest or citation, and that some of the individuals may have been panhandling at night, which is not prohibited under the amended version of § 35-45-17-2. But the Marion County Study also does not include individuals who were panhandling and were not arrested or cited, nor those whose panhandling would violate the amended version of the statute, but not the pre-amendment version. The Court finds it reasonable to infer from the Marion County Study that more than 25 individuals

9

engage, or will engage, in panhandling as defined by § 35-45-17-1, and would be members of the subclass.

The IU Study shows that 73 people were panhandling in downtown Indianapolis on three separate days in 2017.  http://ppidb.iu.edu/Uploads/PublicationFiles/downtown-ind-panhandling-Report-2017.pdf (last visited June 30, 2020).  Of those, it is not clear from the study which individuals engaged in panhandling within the definition of § 35-45-17-1 and which sought funds passively and without an oral request, which does not fall within § 35-45-17-1's definition.  Nevertheless, the Court finds that it can reasonably rely on the IU Study to infer that some fraction of the 73 individuals did engage in panhandling as defined in § 35-45-17-1.  In short, the Court finds based on the Marion County Study and the IU Study that it is reasonable to believe that at least 40 individuals engage, or will engage, in panhandling in downtown Indianapolis as defined by § 35-45-17-1, and would be members of the subclass.

          b.   The Class

The proposed class includes all persons in the State of Indiana who engage, or will engage, in panhandling as defined by § 35-45-17-1.  [Filing No. 17 at 2.]  In addition to the Marion County Study and the IU Study (because members of the subclass are also members of the class), Plaintiffs rely upon the Declarations of Samuel Bolinger and Plaintiff Jane Henegar.  Mr. Bolinger is an attorney whose law office is in Fort Wayne, Indiana, and he states that he believes the amended version of § 35-45-17-2 would prohibit individuals from panhandling in virtually all of downtown Fort Wayne.  [Filing No. 17-2 at 1-2.]  He also states that he is "aware that there are persons in downtown Fort Wayne who regularly orally ask persons for money while they were within 50 feet of the locations [listed in the amended version of § 35-45-17-2]," and that he has "been orally solicited for funds by a number of these persons within the 50-foot limitations noted in the

amended statute." [Filing No. 17-2 at 2.] Ms. Henegar states in her Declaration that she is very familiar with Bloomington, Indiana, and that she believes the amended version of § 35-45-17-2 "will prohibit, or nearly prohibit, persons from panhandling in downtown Bloomington." [Filing No. 17-1 at 2.] Ms. Henegar further states that "[o]ver the time I have been in Bloomington, I have observed persons engaged in panhandling, that is asking persons for money through oral requests, in downtown Bloomington." [Filing No. 17-1 at 2.] Plaintiffs also rely upon various newspaper articles detailing homelessness and panhandling in other Indiana cities including Evansville, Lafayette, Michigan City, and South Bend. [Filing No. 17 at 10-11.]

Neither the Declarations nor the newspaper articles establish that there are a certain number of individuals engaged in panhandling outside of Indianapolis that would violate the statute. But they do establish the likely existence of those individuals, and cause the Court to conclude that it is reasonable to infer that the class – which includes individuals in the subclass as well – is so numerous that joinder would be impracticable.

Additionally, the Court considers "the putative class members' geographic diversity, judicial economy and the ability of the putative class members to institute individual lawsuits." *Phillips v. Waukegan Housing Auth.*, 331 F.R.D. 341, 350 (N.D. Ill. 2019). Given that the class spans the entire state, and because it is reasonable to infer that those who are engaging in panhandling may not have the ability to sue Defendants individually, the Court finds that these factors indicate that joinder of the class members would be impracticable. The Court concludes that it is likely, given the size of the subclass, that there are well over 40 individuals in the State of Indiana engaging in activities defined as panhandling by § 35-45-17-1.

In sum, through the Marion County Study, the IU Study, the Declarations of Mr. Bolinger and Ms. Henegar, and numerous newspaper articles, Plaintiffs have sustained their burden of

showing that the members of the subclass and class are so numerous that joinder of those members would be impracticable.[3]

### 2. *Common Questions of Law or Fact*

Plaintiffs argue that "a common question of law confront all class members, or will confront them on July 1, 2020 – is Indiana Code § 35-45-17-2 (amended eff. July 1, 2020), which will prevent them from engaging in panhandling, constitutional?" [Filing No. 17 at 17.]

Defendants respond that there are not common questions of law or fact among the subclass and class members because both the pre-amendment and amended versions of the statute prohibit certain panhandling activities that Plaintiffs "do not challenge as unconstitutional," such as: panhandling while touching the individual being solicited without their consent; panhandling while the individual being solicited is standing in line and waiting to be admitted to a commercial establishment; panhandling while blocking the path of the individual being solicited or the entrance to a building or motor vehicle; panhandling while using profane or abusive language during a solicitation or after the individual being solicited has declined to donate; and panhandling while

---

[3] Defendants rely upon *Dellantonio v. City of Indianapolis*, 2009 WL 398964 (S.D. Ind. 2009), in which the plaintiffs sought certification of three classes, one which included individuals who "seek money from other persons on the sidewalks of the downtown area of Indianapolis…and who do not engage in the forms of panhandling prohibited by…§ 35-45-17-1, et seq." *Id.* at *2. That case is distinguishable, as plaintiffs submitted evidence of the size of the homeless population in Indianapolis, and evidence suggesting that a significant percentage of the homeless engaged in some form of panhandling. *Id.* The *Dellantonio* Court found that "there is no way of knowing how many of those individuals engage in lawful panhandling within downtown Indianapolis and therefore would be included in the class definition." *Id.* Conversely, here, the Marion County Study indicates how many individuals were cited or arrested for violating § 35-45-17-2, and provides a reasonable basis for the Court to conclude that at least 25 individuals per year were cited or arrested and would fall within the subclass. Combining that number with other individuals identified in the IU Study forms the basis for a reasonable belief that the subclass is made up of at least 40 individuals, and the class even more.

making a statement or gesture to the individual being solicited that would cause a reasonable individual to fear for their safety or feel compelled to donate. [Filing No. 29 at 12.]

In their reply, Plaintiffs argue that they "have not challenged a specific subsection of the panhandling statute; they have challenged the statute itself, and they are seeking that the entire statute be found unconstitutional on its face." [Filing No. 31 at 11.] They assert that "[a] statewide statute is the quintessential instance of standardized conduct that affects all class members, and the statute applies to everyone who engages in any – not all – of the conduct criminalized by the statute." [Filing No. 31 at 11.]

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" for certification to be appropriate. Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when there is a "common nucleus of operative [law or] fact," that is, a "common question which is at the heart of [the] case." *Rosario v Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of law or fact need not be identical; rather, the requirement is satisfied as long as "the class claims arise out of the same legal or remedial theory." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009) (quotation and citation omitted). Commonality requires "that the class members have suffered the same injury." *Jamie S. v. Milwaukee Public Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (quotation and citation omitted).

Here, Plaintiffs on the one hand, and the subclass and class on the other, seek an answer to the same question: whether § 35-45-17-2, in its pre-amendment and amended forms, violates the First Amendment. Contrary to Defendants' characterization of Plaintiffs' claims, Plaintiffs seek to declare the entire statute unconstitutional, not just the parts of the statute that they believe they will violate if they carry out their planned activities on Constitution Day. [*See, e.g.*, Filing No. 22 at 20 (Plaintiffs arguing that "[e]very prohibited activity in [the statute] is prohibited only if it is

13

accompanied by a particular type of speech – solicitation by requesting an immediate donation of money or something of value").] This strategy makes sense, as every prohibition contained within § 35-45-17-2 incorporates the definition of "panhandling" set forth in § 35-45-17-1, which defines panhandling by referring to the content of the individual's speech. The fact that the provision of § 35-45-17-2 that Plaintiffs would violate if they carry out their planned activities on Constitution Day may differ from the provision that members of the subclass or class may violate is of no consequence.

In short, Plaintiffs, members of the putative subclass, and members of the putative class all raise the same legal issue: whether the statute violates the First Amendment. Plaintiffs have met their burden of showing that there are questions of law common to the subclass and class.

### 3. Typicality

In support of their motion, Plaintiffs argue that "[a]lthough [they] may not fit the popular profile of 'panhandler,' they have orally requested contributions and items of value from persons in the past and wish to continue to do so in the future. They are panhandlers, and their claims have the same essential characteristics as the claims of the class at large and the subclass." [Filing No. 17 at 19 (quotation and citation omitted).]

Defendants argue that the named Plaintiffs' claims are not typical of the class because the effect that the statute has on their behavior and, in turn, their legal claim, differs from the typical panhandler. [Filing No. 29 at 13.] They assert that Plaintiffs engage in panhandling one day each year and collect $50 at most, but "the typical individual in the proposed class would be engaging in panhandling more frequently and in a larger variety of locations than the Plaintiffs who panhandle only in Indianapolis and only on Monument Circle." [Filing No. 29 at 13-14.] Defendants also contend that Plaintiffs are only challenging part of the new law, as it applies to

14

their circumstances, and the members of the class could be engaging in panhandling that violates other provisions of the statute. [Filing No. 29 at 14.] Defendants argue that the named Plaintiffs are focused on soliciting at a public monument, which is subject to a higher standard of review because it is a public space, but some of the class members may panhandle within 50 feet of the entrance or exit of a business, which may include a nonpublic forum and would be subject to a lesser standard of review. [Filing No. 29 at 16.] Defendants state that factual and legal differences between Plaintiffs' claims and those of the class members "are significant enough that the Plaintiffs would likely focus on arguments relevant only to their claim, and not the interests of the entire class." [Filing No. 29 at 17.]

In their reply, Plaintiffs contend that "[a]nyone who panhandles in a prohibited manner – regardless of how much money she receives as a result, whether she receives any money at all, how often she panhandles, or in what part of the city or state she panhandles – is subject to being cited or arrested and convicted of a Class C misdemeanor." [Filing No. 31 at 12.] Accordingly, Plaintiffs argue, their claims have the same essential characteristics as the claims of the class and subclass. [Filing No. 31 at 12-13.] As for Defendants' argument that different levels of scrutiny might apply depending on where the panhandling occurs, resulting in the Plaintiffs' claims not being typical, Plaintiffs argue that § 35-45-17-1 defines "panhandling" as occurring "on a street or in another public place," and that Defendants acknowledged in their response to the Motion for Preliminary Injunction that the statute is a content-based restriction that is subject to strict scrutiny. [Filing No. 31 at 13.]

In order to certify a class, the Court must find that the claims or defenses of the representative parties are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements often merge because both "serve as guideposts for

determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest*, 457 U.S. at 157 n.13. Typicality may exist where there are factual distinctions between the claims of the named plaintiffs and other class members, and courts are to "focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quotation and citation omitted). A named plaintiff's claims are typical if they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [are] based on the same legal theory." *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 866 (7th Cir. 2018).

The named Plaintiffs on the one hand, and the class and subclass on the other, all have the same goal: to enjoin enforcement of § 35-45-17-2, in both its pre-amendment and amended forms. Whether Plaintiffs panhandle one day per year and receive a small amount of money, versus 365 days a year and receive more money, is irrelevant. A violation of the statute is not dependent on the frequency or continuity of the panhandling. Plaintiffs engage in activities on Constitution Day which meet the definition of panhandling, just as subclass and class members do, perhaps on a more regular basis. The Court rejects the notion that the frequency with which Plaintiffs engage in panhandling, and the amount of money that they receive, has anything to do with whether their claims are typical of the class or subclass.

Additionally, and as discussed above, Plaintiffs challenge § 35-45-17-2 as a whole, and not just the provisions which apply to their activities on Constitution Day. Consequently, Defendants' argument that Plaintiffs' claims are not typical because class members may violate portions of the statute which Plaintiffs do not challenge is unavailing. Plaintiffs challenge the entire statute. And

16

Defendants' argument that different standards of review may apply depending on where the panhandling takes place is belied by both Defendants' acknowledgement in their response to the Motion for Preliminary Injunction that strict scrutiny applies to the statute, and § 35-45-17-1's definition of panhandling as occurring "on a street or in another public place."  Ind. Code § 35-45-17-1(a)(1).

Plaintiffs' claims and the claims of the class and subclass "have the same essential characteristics":  seeking to enjoin § 35-45-17-2 because it is unconstitutional.  *Muro*, 580 F.3d at 492; *see also Frank v. Walker*, 196 F. Supp.3d 893, 902 (E.D. Wis. 2016) (plaintiffs' claims were typical of the class where they were "based on the same legal theory as the class's claims, *i.e.*, violation of the Constitution").  Further, the preliminary injunction Plaintiffs seek would benefit the entire class and subclass.  *See Mays v. Dart*, --- F. Supp. 3d ---- 2020 WL 1812381, at *4 (N.D. Ill. 2020) (typicality requirement satisfied where plaintiffs and class members would all benefit from entry of temporary restraining order).  Plaintiffs have sustained their burden of showing that typicality of claims exists.

### 4.  *Adequacy of Representation*

Plaintiffs argue that they "are being injured and being threatened with injury in the same manner as the class and subclass," that their interests "are completely aligned with the class and subclass," and that they "have a substantial stake in these proceedings."  [Filing No. 17 at 20.]  They also assert that the Court "can take notice that the attorneys representing the plaintiffs frequently engage in precisely this type of class action civil rights litigation" and are qualified and experienced.  [Filing No. 17 at 21.]

Defendants respond that the Plaintiffs are not adequate class representatives because: (1) there may be class members who violate provisions of the statute that are not being challenged by

Plaintiffs; (2) a different standard of review may apply to class members who panhandle in front of a private business or places where financial transactions occur; and (3) Plaintiffs have failed to challenge the pre-amendment version of the statute until now, despite engaging in panhandling since 2016, so "their legal interests are not adequately aligned with those they seek to represent." [Filing No. 29 at 17-19.]

In their reply, Plaintiffs reiterate their arguments regarding commonality and typicality. [Filing No. 31 at 14.]  As to Defendants' argument regarding the timing of Plaintiffs' lawsuit, Plaintiffs assert that they "filed suit promptly after the Indiana General Assembly amended its statute to virtually prohibit panhandling throughout the downtown areas of Indiana's cities [and c]learly the plaintiffs will vigorously pursue the class's interests as well as their own."  [Filing No. 31 at 14.]

Under Rule 23(a)(4), Plaintiffs must show that they "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The named Plaintiffs must be members of the class and subclass, and must "possess the same interest and suffer the same injury" as the other class and subclass members.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S., 338, 348 (2011) (quotation and citation omitted).  The Court has already addressed the fact that Plaintiffs challenge the statute in its entirety, and that the same standard of review will apply to all panhandling which violates the statute by virtue of § 35-45-17-1's definition of "panhandling."  Additionally, Defendants have not presented any legal authority to support their argument that waiting to challenge the statute until the amended version – which is much more prohibitive than the pre-amendment version – is set to take effect somehow makes them inadequate class representatives.  The Court finds that Plaintiffs are adequate class representatives.  Further, the Court finds that Plaintiffs' counsel has

extensive experience litigating these types of cases, and that they too will adequately represent the class.

The Court has no basis to find that the named Plaintiffs and their counsel will not pursue the class's interests. Plaintiffs have met their burden of satisfying the adequacy of representation requirement set forth in Rule 23(a)(4).

### C. Rule 23(b) Requirement

In addition to satisfying all of the prerequisites of Rule 23(a), Plaintiffs must show that the class qualifies as one of the types listed in Rule 23(b). Plaintiffs proceed under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs argue that the class and subclass satisfy Rule 23(b)(2) because "an allegedly unconstitutional statute has imposed uniform conditions on the class and subclass." [Filing No. 17 at 21.]

Defendants do not address Rule 23(b)(2) in their response brief. [*See* Filing No. 29.]

It is indisputable that Plaintiffs seek only injunctive relief, and that the relief would apply to the class (and subclass) as a whole. The proposed class and subclass meet the requirements of Rule 23(b)(2).

Because Plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(2), the Court **GRANTS** Plaintiffs' Motion for Class Certification. [Filing No. 16.]

19

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification, [16], and **CERTIFIES** a class of:

> All persons in the State of Indiana who engage, or will engage, in panhandling, as defined by Indiana Code § 35-45-17-1.

The Court also **CERTIFIES** a subclass of:

> All persons in the City of Indianapolis who engage, or will engage, in panhandling, as defined by Indiana Code § 35-45-17-1.

Additionally, the Court **DESIGNATES** Jane Henegar, Kathryn Blair, and Neil Hudelson as representatives for the class and subclass pursuant to Fed. R. Civ. P. 23. The Court also **DESIGNATES** Kenneth Falk, Gavin Rose, and Stevie Pactor as class counsel pursuant to Fed. R. Civ. P. 23(g).

Date: 6/30/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**